E. Palmer Grow and DeWitt Grow v. Jacob Seligman, Frank Rossman and Joseph Seligman.

*Trade-name—Injunction to restrain use of name after sale of business.*

Where a person had established a business in the use of the name "Little Jake" and afterwards sold the business and stipulated not to make use of it in a rival business to that of his assignee, but that the latter might have the benefit of its use, *held*, that there was no reason in public policy why the vendor should not be enjoined from violating his agreement.

There is no necessary fraud upon the public in such a contract, and no necessary deception.

Others who associate with the vendor in establishing a rival business under the name "Little Jake" may be restrained to the same extent as the vendor himself.

Appeal from Bay. Submitted Jan. 18. Decided Jan. 25.

Injunction. Defendants appeal. Affirmed.

*Shepard, Lyon & Clark* and *Hatch & Cooley* for complainants. A firm has no right to use its trade-name after selling the business: *Ayer v. Hall* 3 Brewst. (Pa.) 509; *Probasco v. Bonyen* 1 Mo. App. 241; *Filkins v. Blackman* 13 Blatch. 440; *Del. & Hud. Canal Co. v. Clark* 13 Wal. 311; Moak's Underhill's Torts, 633; the purchaser should be protected from its use by others: *Curtis v. Bryan* 2 Daly 312; *Ford v. Foster* 3 Eng. 538; and equity will interfere to protect the right to the exclusive use of it; *Shaver v. Shaver* 54 Ia. 208; and to the good will: Brown on Trade Marks, 65; *Woodward v. Lazar* 21 Cal. 448; *McCardel v. Peck* 28 How. Pr. 120; *Marsh v. Billings* 7 Cush. 322; *Howe v. Searing* 10 Abb. Pr. 264; *Christy v. Murphy* 12 How. Pr. 77; *Wolfe v. Burke* 56 N. Y. 122; *G. & H. Mfg. Co. v. Hall* 61 N. Y. 226; neglect for years to carry on business does not prevent resuming a trade mark or sign of good will, and does not entitle another to use it: *Hudson v. Osborne* 39 L. J. 79;

*Hall v. Barrows* 9 Jur. (N. S.) 483 ; the vendors may be enjoined from using the name if it deceives the public and injures those to whom they have sold their business: *Newman v. Alvord* 51 N. Y. 189; and if the latter have done nothing to deprive them of this remedy: *Hennessy v. Wheeler* 69 N. Y. 272.

*Tarsney, Tennant & Weadock* for defendants. A trade-name cannot be sold to a stranger with authority to represent himself as the original owner of it : *Leather Cloth Co. v. American Leather Cloth Co.* 11 H. of L. Cas. 523 : *Samuel v. Berger* 24 Barb. 164: 4 Abb. Pr. 88 ; *Meriden Brit. Co. v. Parker* 39 Conn. 450 ; *Partridge v. Menck* 2 Sandf. Ch. 622 : 2 Barb. Ch. 101 ; *Palmer v. Harris* 60 Penn. St. 156 ; *Ferguson v. Dabol Mills* 2 Brewst. 314 ; protection is given in the case of trade marks only when the credit of the owner is certified by it: *Fetridge v. Wells* 4 Abb. Pr. 146 ; *Wolfe v. Burke* 56 N. Y. 115: 7 Lans. 151; and not where it misrepresents the article : *Taylor v. Gillies* 5 Daly 285 ; *Witthaus v. Braun* 44 Md. 303 ; *Connell v. Reed* 128 Mass. 477 ; *Sherwood v. Andrews* 5 Am. L. Reg. (N. S.) 588.

COOLEY, J. The complainants in this suit constitute the firm of Grow Brothers, doing business as wholesale and retail dealers in ready-made clothing at Bay City. In their bill in this cause they state that previous to the year 1872 the defendant Jacob Seligman was a retail dealer in ready-made clothing at Bay City, carrying it on under the name and style of "Little Jake," and complainants were clerks for him; that in that year complainants purchased of him the said business, and also purchased the right to use the name and style of "Little Jake" in carrying on and advertising the said business, and in consideration that Seligman would not thereafter sell, transfer or give to any person or firm the right or permission to use the words and name "Little Jake" in conducting a business at Bay City, and would not again enter into business at Bay City of a similar kind, they paid to him the price agreed upon therefor.

Complainants further state that at the time of their said purchase Seligman represented to them that the words "Little Jake" were a trade-mark belonging exclusively to himself, and that he procured the same to be copyrighted under the laws of Congress; that after purchasing his business they immediately commenced to use the words "Little Jake" in advertising the same, and carried on the business under that name for three years or more, when they commenced to advertise under the name of Grow Brothers, though not using that name exclusively; that they have built up a large and profitable business, and in the meantime said Seligman has been carrying on a large and profitable business of a similar nature at East Saginaw; that in January, 1881, it came to the knowledge of complainants that said Seligman was making arrangements to establish a business house at Bay City for the purpose of carrying on the business of retail dealer in clothing, hats, caps and furnishing goods, and that he had associated with him for the purpose Joseph Seligman and Frank Rossman, the other defendants; that they soon circulated advertisements that "Little Jake, Rossman & Co." were about to establish themselves at Bay City to engage in carrying on the business of dealing in clothing, hats, caps, furnishing goods and lumbermen's supplies; that complainants protested to said Seligman and called his attention to their said agreement, but were told by him that he did not care for the agreement and should start the store in Bay City; that said Seligman with his associates has rented a store in Bay City, filled it with a stock of clothing, etc., and advertised that "Little Jake, the king clothier" will open it on a day specified, and that he is about to do so under the business name of "Little Jake, Rossman & Co.," in disregard of his agreement.

And complainants pray that "the sole right to use the name 'Little Jake' in carrying on and advertising the clothing, hats, caps, and gents' furnishing goods business at Bay City, may be decreed to belong to and be the exclusive property of your orators, and that the said Jacob Seligman may be perpetually enjoined and restrained from now or

hereafter carrying on the business at Bay City, Michigan, of selling clothing, hats, caps and gents' furnishing goods, either individually or as a copartner in the firm of 'Little Jake, Rossman & Co.,' or in any other firm, copartnership or corporation by whatever name it shall be called at Bay City, Michigan, and that the said firm of 'Little Jake, Rossman & Co.,' and each and every member of said firm, may be perpetually enjoined and restrained from advertising in any manner the business of selling at Bay City, clothing, hats, caps and gents' furnishing goods by using the words and trade mark 'Little Jake,' and from using the said words 'Little Jake,' in any manner in said business at said Bay City." The defendants filed an answer in the nature of a demurrer, admitting all the facts set out in the bill, but denying that upon them complainants are entitled to any relief.

The decree made by the court of chancery, and from which the defendants have appealed, is "that the said defendants be perpetually enjoined from using in advertising the business of selling clothing, hats, caps and gents' furnishing goods at Bay City, Michigan, the style and words 'Little Jake,' and from in any manner, either singly or in connection with other words, characters, figures or devices using the words 'Little Jake,' in carrying on said business at said Bay City, Michigan, and that said defendant, Jacob Seligman, be perpetually enjoined from engaging in or carrying on the business of selling clothing, hats, caps and gents' furnishing goods, at said Bay City, directly or indirectly, either individually or as copartner in the firm of Little Jake, Rossman & Co., or in any other firm or copartnership by whatever name the same may be called."

In the argument in this court it is conceded that the contract between complainants and Jacob Seligman, which is set up in the bill, so far as it restrained Seligman from carrying on the business at Bay City was one which it was lawful for the parties to enter into, and a breach of which might justly and properly be enjoined. It is argued, however, that in so far as the contract provides for the use by com-

plainants of the business name of "Little Jake" it provides for a deception upon the public; the apparent purpose being to mislead the public into the supposition and belief that a person with whom they had been accustomed to deal, and who had established a business reputation upon which they relied in their dealings with him, was still continuing the same business, and that the public would have in any transactions with him all the assurances of fair and just dealings which could come from such established reputation. And it is insisted that equity should not assist in enforcing a contract of which deception of the public is the purpose.

The principle upon which defendants rely is plain enough, and has often been recognized in cases having resemblance to the present in some of their features. Among these cases are *Wolfe v. Burke* 56 N. Y. 115; *Taylor v. Gillies* 5 Daly 285; *Palmer v. Harris* 60 Penn. St. 156; *Meriden Co. v. Parker* 39 Conn. 450; *Connell v. Reed* 128 Mass. 477. But as complainants show by their bill they have for some time been carrying on the business under their own name, and as the decree does not go beyond enjoining the defendants from making use of the name "Little Jake" in their own business, we are not called upon to determine whether complainants could or could not be protected in the use by themselves of the same name in their own business. There was nothing illegal in Jacob Seligman agreeing to withdraw altogether from the business at Bay City, and no necessary deception upon the public in his stipulating to discontinue the use of his previous business name. It is a breach of this stipulation that the court has enjoined.

It is also urged on the part of the defendants that the decree is too broad in restraining the defendants Joseph Seligman and Frank Rossman, who were not parties to the contract with complainants, from carrying on their own business in any way or mode which would have been open to them if no such contract had been in existence. But under the facts shown by the bill and admitted by the answer it is plain that the use of the name "Little Jake" in the business of these two defendants at Bay City, would

be calculated to lead the public to suppose that the defendant Jacob Seligman was associated in the business with them. If he is associated with them in fact, it is a violation of his agreement and a wrong to the complainants in which all the defendants unite; if not associated with them, the use of the name is calculated to mislead the public to the prejudice of complainants. That the purpose of making use of the name in their new business at Bay City was to deprive complainants of the advantages for which they had paid when they purchased Jacob Seligman's business, is charged by the bill and admitted by the answer; and that was a distinct wrong in which all of the defendants united. It was a wrong whereby they expected to appropriate the good-will of a business which belonged to complainants; and the decree is no broader than is essential to preclude its consummation.

The decree must be affirmed with costs. It was conceded on the argument that certain clerical errors were committed in drafting the decree, and these counsel will correct.

The other Justices concurred.