WILLIAM W. McCOMB et al., complainants-respondents,

*v.*

RAYMOND E. HANLY et al., defendants-appellants.

[Argued May 26th, 1941. Decided June 25th, 1942.]

*Mr. Joseph Beck Tyler,* for the complainants-respondents.

*Mr. W. Louis Bossle,* for the defendants-appellants.

The opinion of the court was delivered by

THOMPSON, J.

This is an appeal from a mandatory injunction of the Court of Chancery compelling the defendants to remove or demolish certain buildings constructed by them in alleged violation of a restriction as to cost, running with the land; or, to bring the true cost thereof up to the amount of the minimum imposed by the restriction.

Complainants and defendants are the owners respectively of certain dwelling plots the title to which is derived from a common predecessor in ownership who originally subdivided a larger tract into streets and building lots, filed a map thereof, and sold from it to individual purchasers by deeds containing a series of restrictions as to use, including one prescribing the minimum of cost for any house or garage that might be erected upon the lot conveyed.

It is claimed that the phrasing of the restriction in question, as used in deeds out of the original grantor, notwithstanding an apparent limitation of its application to the particular lot conveyed by the individual deed, did, nevertheless, when considered with other factors, operate to establish a neighborhood scheme with reference to the entire tract. Defendants' buildings are alleged to be in contravention of the scheme so claimed to have been established. The lots owned by the defendants, however, were never conveyed directly by the original common owner; they were purchased by Hermine Kind, one of the complainants, at a sale in execution of a levy under a judgment in a suit against the corporate owner, Fidelity Corporation of New Jersey; the sheriff's deed to her contained no restrictions. She subse-

quently conveyed to Haddon Township, imposing the restrictions in question, and Haddon Township later contracted to sell to the defendants, subject to said restrictions.

The following facts give rise to the issues presented in this case:

In 1924 and 1925 Fidelity Corporation of New Jersey developed two tracts of land, known as Plan No. 1 and Plan No. 2, respectively, the descriptive term "Haddon Homesteads" being applied to each tract. Maps of plotted lots and streets had been filed, and sales were made from Plan No. 1, comprising 99 contiguous lots numbered 1 to 99 inclusive, and Plan No. 2 comprising 86 contiguous lots numbered 100 to 185 inclusive. The lands affected by the decree under appeal, and owned by defendants Raymond E. Hanly and Hanly Brothers, Incorporated, are in the Plan No. 2 section, and are Nos. 180 and 181. The lots of the complainants McComb and Kind are Nos. 147 and 111, respectively, in Plan No. 2. The lot of the complainants Goldner is No. 99 in Plan No. 1. Complainants contend that both Plan No. 1 and Plan No. 2 were together the subject of the one general neighborhood scheme alleged. Upon their ownership of the lots named they base their claim of right to enforce against the defendants the said restrictions as the basis of an alleged general neighborhood scheme.

As the sales were made by the developer corporation, it included in its deed to the purchaser a series of restrictions. Of 74 lots conveyed, 56 had identical restrictions, the fourth of which reads, "The house to cost not less than $5,000, and the garage to cost not less than $350." In all the deeds the restrictions were substantially similar. The preamble in each case reads, "Subject to the following restrictions and conditions applying to the property hereby conveyed only." The significance of the word "only" in the preamble is of exceeding importance in the consideration and determination of the rights of the parties herein. In fact, it is the dispositive factor. We are constrained to the opinion that the learned Vice-Chancellor failed to ascribe to it its true weight, and that such failure led to an erroneous conclusion in this particular case.

As was said in the case of *Scull* v. *Eilenberg, 94 N. J. Eq. 759* (at *p. 771*), there are various ways by which a neighborhood scheme may be created in the development and sale of real estate, the most complete way being by a reciprocal covenant whereby the grantor covenants to insert like covenants in all deeds out of the common development; or, by selling them upon representations to the individual purchasers that like covenants will be inserted in the seller's deeds to others, for the common benefit; or, where the seller pursues a course of conduct indicating a neighborhood scheme, leading the several purchasers to assume its adoption and the adherence of all owners to it by such conduct. These principles undoubtedly apply in the consideration of restrictive covenant questions and to the applicability of a neighborhood scheme to a subdivided tract of land, but we are unable to find in any of the cases wherein restrictive covenants have been upheld, and a neighborhood scheme determined, an express delimitation of the extent and effect of the restrictive covenants such as was present in deeds upon which the complainants rely in the instant case. A restrictive covenant is a contract. Any neighborhood scheme that flows from such restrictive covenant is incident to such contract and has its virtue in the terms of that contract. In the present case the origin of the restrictive covenants was in the deeds out of the Fidelity corporation, who took the precaution expressly to provide therein that the restrictions and conditions should apply "to the property hereby conveyed *only.*" (Italics ours.) Manifestly the preamble in the form quoted negatives an intention of general application of the restrictions on a neighborhood basis, or at least it reserves in the vendor the control of the subsequent course of sales and development so far as burdening its other lands is concerned. Instead of extending to a neighborhood it narrows and restricts to a single property. "Only" is a word of limitation, not of amplification or extension. The vendor had a right to reserve to itself the power to deal freely with restrictive features as it saw fit in succeeding conveyances—to vary, modify or omit altogether. It was a definite notice in the initial conveyance that the grantor was reserving such right in itself. It continued to safeguard itself in this respect by repeating the

limitation in its subsequent deeds to further purchasers, and it did, indeed, vary its restrictions in several respects in a number of instances as disclosed by the evidence in this case. There is no ambiguity in the language used in the restrictive covenants. It is difficult to conceive in just what fashion it would be possible for an owner of land to impose a covenant on a portion of his property without subjecting the rest of his property to a like burden if the language used in the restrictive covenants under consideration here does not do it. If purchasers of these lots had such notice of the existence of the covenant that they base their claim for relief on having relied on it, then they had notice of the limited terms of that covenant and of the fact that the contiguous and neighboring land was left unbound by it. The fact that the subsequent use of the restrictive covenant in later deeds tended by repetition to create a favorable neighborhood condition does not destroy the substance of the right originally reserved by the common grantor. That right was the privilege of adapting each transaction to the conditions as they might obtain in the course of time, and while grantor still owned other land in the neighborhood. This covenant was in writing in each case in which it was made by deed; the deeds were duly recorded, constituting the most effective constructive notice of the nature of the covenant. We do not think the facts of the instant case bring it within that class of cases in which a court of equity will intervene. All the rights that the complainants here could possess derive from the original restrictive covenants cited, and the opportunity to know the terms of such covenants and the limitations and reservations, not merely implied but actually clearly expressed, was afforded to every person dealing with the lands.

But the complainants contend that in spite of the precaution taken by the original grantors to protect their unconveyed lands from the burden of the specific restrictions or the implication of a neighborhood scheme, such grantors, nevertheless, effected such a qualification of the use of their other lands because they or their agents orally represented to purchasers from time to time that their said other lands would have imposed upon them the same restrictions, as the lots might be conveyed in the course of subsequent sales. It

would be a dangerous rule that purchasers of lots may accept deeds containing a covenant of restriction imposed on the land conveyed, limiting such covenant to the particular land described in the deed, and then they or their successors in title subsequently be allowed to come in with oral testimony tending to subvert the terms of such covenant. In the instant case the oral representation alleged is that all lots would be conveyed with a like covenant. The covenant was that the buildings on the land should cost not less than a certain amount, but that it applied only to the land conveyed by the specific deed in question. The covenant must be read as a whole. The purchaser cannot retain the benefit of the part restricting the building cost and ignore the part which prevents it from having application to any other land than that which the purchaser buys. And to say that the owner in his written deed held the restriction to the land therein described only, but nevertheless held out orally to the purchaser that a like restrictive covenant would be incorporated in all future deeds, is simply to say that the seller was merely going to repeat the limiting words in his future deeds, the effect of which, of course, would be to continue the original protection it afforded to his unsold lands, and mean that he was not permitting the burden of a neighborhood scheme to fasten upon the land. So the contention of the complainants brings them no advantage from that direction.

We find, therefore, that the limitation of the restrictive covenant to the lands conveyed by the respective deeds in which such covenant was incorporated negatived any intention of the grantor to impose a neighborhood scheme upon the remaining unsold lands, and was in fact express notice that such a burden should not attach thereto.

The cause will be remanded for the purpose of having a decree entered in the Court of Chancery denying the injunctive relief sought, and dismissing the bill of complaint.

*For affirmance*—THE CHIEF-JUSTICE, BODINE, PERSKIE, PORTER, DEAR, RAFFERTY, JJ. 6.

*For reversal*—PARKER, CASE, DONGES, HEHER, COLIE, WELLS, HAGUE, THOMPSON, JJ. 8.